(60 Misc. Rep. 374.)

### HARING v. MURPHY et al.

(Supreme Court, Trial Term, Fulton County. August, 1908.)

1. INSANE PERSONS (§ 93*)—COMMITTEE—ACTIONS MAINTAINABLE—STATUTORY PROVISIONS.

Code Civ. Proc. § 2340, authorizing the committee of the property of an insane person to maintain any action which such person might have maintained if the appointment had not been made, seeks only to authorize the committee to bring such actions as the insane person might have maintained, and does not limit the authority of the committee to such actions.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 163; Dec. Dig. § 93.*]

2. INSANE PERSONS (§ 93*)—COMMITTEE—ACTIONS MAINTAINABLE.

The committee of an insane person may invoke the power of the equity court for the relief of such insane person and the restoration of his property diverted from the custody and care of the court by errors by the committee in the performance of her duties.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 163; Dec. Dig. § 93.*]

3. VENDOR AND PURCHASER (§ 228*)—BONA FIDE PURCHASERS.

A grantee with knowledge that the premises had been paid for in part by his grantor with the money of an insane person of whom she was the committee takes subject to a lien therefor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495, 496; Dec. Dig. § 228.*]

4. JUDGMENT (§ 767*)—LIEN—NOTICE.

An order for a deficiency judgment on mortgage foreclosure against Amanda M. Haring, and the docket thereof as and for a judgment, constituted no notice as to property standing in the name of Melvina Haring, where it does not appear that a different name was employed with intent to avoid the incumbrance.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1324; Dec. Dig. § 767.*]

5. INSANE PERSONS (§ 40*)—COMMITTEE—MISAPPROPRIATION OF PROPERTY.

The committee of an insane person purchased premises, taking a deed to herself and executing a purchase-money mortgage and paying the balance with money held by her as committee, and thereafter sold the same to another, who assumed the purchase-money mortgage. Thereafter a judgment creditor, for a deficiency arising on a mortgage foreclosure, of the person acting as committee and four others, bid in her interest in the premises on an execution issued on the judgment. *Held*, that the money of the insane person which went into the purchase of the premises was a lien thereon prior to the claim of the judgment creditor.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 40.*]

Action by Melvina Haring, as committee for her lunatic husband, against John Murphy and others, to declare a lien in his behalf. Findings for plaintiff.

---

Getman & Fraser, for plaintiff.
Keck & Rogers, for defendant Murphy.
Fred Linus Carroll, for defendant Cook.
Dudley & Dennison, for defendant Haring, Jr.

SPENCER, J. It is a matter of gratulation that whatever may have been done by any of the parties to this action was not done by fraudulent design or to accomplish any dishonest results, but because of honest mistakes.

The uncontradicted facts are that, on May 20, 1902, there came into the possession of the plaintiff, as committee for her lunatic husband, the sum of $1,575.62. On the 1st day of August following, she purchased the house and lot, the subject-matter of this controversy, from one Hays, for the sum of $3,294.64, taking the deed to herself in the name of Melvina Haring, and executing a purchase-money mortgage for $1,600, and paying the balance with money held by her as committee. She has since occupied said premises and expended considerable sums in making improvements and repairs. On the 16th day of June, 1906, the plaintiff, in the same name, conveyed to her son, the defendant James Y. Haring, Jr., he assuming and agreeing to pay the purchase-money mortgage as part of the consideration. He took title with knowledge that said property had been paid for in part by money belonging to the lunatic. It further appears that in March, 1897, the plaintiff, under the name of Amanda M. Haring, joined with four others, heirs of their father, in a bond and mortgage to defendant John Murphy, upon lands formerly owned by their father, as security for $4,500. In June, 1898, said Murphy commenced an action to foreclose said mortgage, naming the plaintiff as Amanda M. Haring. Such further proceedings were taken that an interlocutory judgment was entered January 16, 1899, awarding judgment to Murphy for the amount unpaid on the mortgage and for a sale of the premises in the usual form. On the 6th of February, 1899, the premises were sold pursuant to judgment, and Murphy purchased at the sum of $2,000. On the same day, the referee made report, showing the payment of the costs and expenses and leaving a balance of $1,166.41 to apply on the mortgage debt. He also reported a deficiency still owing Murphy of $3,862.58. On the 11th day of March, 1899, by usual order, said report was confirmed, which order directed that Murphy have judgment against the mortgagors, including Amanda M. Haring, for the sum of $3,862.58. This order was filed and entered March 16, 1899. No formal judgment was ever made or entered pursuant to the foregoing order, but the clerk docketed the order as a judgment. On July 16, 1906, Murphy gave notice to the mortgagors that he would apply to the court August 22, 1906, for leave to issue execution against them for such deficiency. The order was entered August 22, 1906. Thereupon execution was issued to the defendant Cook, as sheriff, who, pursuant thereto, sold the interest of Amanda M. Haring in said premises to said Murphy for $1,500. A certificate of said sale was made and recorded. The committee brings this action to have the title to the premises declared to be in the name of, and as belonging

to, the lunatic; or that the money, belonging to him and used by her
in the purchase of the property, be declared a lien upon said property
prior to the rights of the defendants, if any.

The first and most strenuously contested question is whether the
plaintiff may maintain the action. She contends that she has authority
under the provisions of section 2340 of the Code of Civil Procedure.
The defendants insist that that section is the only authority a commit-
tee has for bringing suits, and that the present cause of action is not
within its terms. The views, which I expressed upon the trial and
still retain, are to the effect that the Code section referred to is merely
permissive, and does not, and was not intended to, limit the authority
of the committee to the particular actions and proceedings referred
to therein. On the contrary, it seeks only to authorize the committee
to bring such actions and institute such proceedings as the lunatic
would have had the right to bring or institute had no committee been
appointed. The only authority relied on for a contrary construction
is the remark of Justice Brown in Koepke v. Bradley, 3 App. Div.
391, 394, 38 N. Y. Supp. 707, 709, where he says:

"That the Legislature in adopting this section intended to enlarge the pow-
ers of committees in respect to bringing actions on behalf of lunatics and
other incompetent persons is very clear, and it has prescribed the limitation
upon that power."

It is perfectly evident that the final clause of the sentence is an in-
advertence, and bears no relation to the question up for decision in
that case. If such casual lapses, too often found in judicial opinions,
were to be regarded as authoritative, it would render the interpretation
of the law uncertain to the last degree. I, therefore, conclude that
the section contains no limitation or restriction upon the powers of
the committee, and was not intended for that purpose.

That the section has no relation to the present action is evident from
the fact that the gist or gravamen of the action is the act or neglect of
the committee committed by her in the performance of the duties of
her office. The action seeks to remedy or correct such mistakes. It
would seem impossible to bring such a cause of action within the
provisions of the Code. There could not have been any such cause
of action unless there had been an appointment of a committee.

Leaving this topic, we come to the question whether the court, at
the suit of the plaintiff, may relieve the lunatic from the results of her
errors. Were the suit brought by her individually and for the pro-
tection solely of herself and bondsmen, this court might refuse to inter-
pose, on the ground that no one was at fault except herself, and that
the court should not disturb transactions which she deliberately but
ignorantly made. But she invokes the power of the court, as the ap-
pointee and servant of the court, in regard to errors in the performance
of her duties as committee, and for the relief of the lunatic and the
restoration of his property diverted from the custody and care of the
court. This is quite a different proposition. It may not be said that
the court should shut its doors against such an application. Its duty
to its servant and to the unfortunate lunatic, whose property is in its
custody, forbids such a decision. I am, therefore, of the opinion that

the plaintiff is rightfully in court, and may rely upon the exercise of its equitable powers.

Assuming that these things be true, nevertheless the court may not relieve the lunatic from the results of these errors, if wrong or injury should result to others in so doing. As to the defendant James Y. Haring, Jr., his claim may be disposed of with a word. He is chargeable with knowledge that the committee had no authority to use the money of the lunatic in the purchase, and that any interest he might acquire was subject thereto. As to the defendants Murphy and Cook, I am of the opinion that the order of confirmation in the foreclosure suit was no authority to the clerk to docket the same as and for a judgment. But as to this, I make no decision, since I do not deem it necessary to the case. But I do decide that such order and docket constituted no notice as to property standing in the name of Melvina Haring, and did not become a lien thereon as to any one but those having actual notice. If it were alleged and established that a different name was employed with the intention to avoid the incumbrance, the result might be otherwise. But such was not the case. There is no proof that the plaintiff had knowledge of the deficiency claim against her. The name she usually employed was Melvina. It was only in connection with the estate of her father that the name Amanda M. has been used. And while she individually is, no doubt, estopped from claiming exemption from the lien of the docket, I am of the opinion that the estate of the lunatic, in behalf of which she sues, is exempt therefrom.

We thus come to the question whether it will be inequitable to permit a recovery herein as against the defendants Murphy and Cook. The judgment is for a deficiency upon a mortgage foreclosure. There is something about such judgments that, from common knowledge, militate against their strict enforcement. It appears from the record that real estate, upon which Murphy was willing to take a mortgage for $4,500, was struck off to him for $2,000. As there is no explanation, the inference is that he made a good bargain. The judgment, if there was one, was against four other parties, and for over five years he made no attempt at collection. If he should fail here to make it effectual, he would not be a loser, but simply fail to get something by reason of another's mistake. The question, therefore, is, should he be allowed to advantage himself to the loss or disadvantage of the lunatic? I think not. He may be permitted to recover what he may against the plaintiff, individually; but, as to the lunatic, he should not be permitted to take anything.

These observations bring us to the conclusion that only that part of the plaintiff's prayer for relief should be granted that asks that the money of the lunatic, which went into the purchase of the real estate in question, be declared a lien upon such real estate prior to any claims of the defendants, and that all proceedings taken by and under the judgment in foreclosure and the deed to Haring, Jr., be declared void as to the aforesaid rights of the lunatic, and that the same, as to him, be set aside.

Let findings of fact and conclusions of law be prepared and submitted in accordance with this opinion; and let judgment be entered thereon, which judgment may provide, among other things, that the plaintiff, as committee, may apply on the foot of the judgment for leave to sell the aforesaid real estate, and from the proceeds thereof take and receive the amount of money of the lunatic, so employed in its purchase, with interest from the date of such purchase; that the balance, if any, after the payment of costs as herein provided, be paid to the defendant Murphy; and that such defendant may apply upon the foot of this judgment for an adjudication in respect to such surplus, if any such surplus shall remain.

The plaintiff, as committee, should have costs, to be paid out of the proceeds of any sale that may be made herein, but none of the defendants should have costs.

Ordered accordingly.